with Russell v. Journal News and Deloria et al. Good morning, Mr. Joseph. Good morning, Your Honor. Your Honors, the appellate in this case asked the court to reverse the two court decisions of the court below's holding that the defendant officers were entitled to qualified immunity for a case which occurred on property open to the public, where he had — where it was undisputed that he had not been told he could not be present, and the court below's holding that plaintiff could not establish a favorable termination as part of his malicious prosecution cause of action where his underlying criminal charges had been dismissed for facial insufficiency and there was a statutory bar against recommencement by Operation of New York Speedy Flowers. So you would agree that if there was no statutory bar, the matter would be resolved. It would be dismissal without prejudice, would not be a favorable termination? It would — well, I think there's two elements to this, as the Smith-Hunter court and again in Cantolino had held, which is, one, is it inconsistent with the innocence of the accused, and certainly under that prong, Mr. Russell's termination was not inconsistent with his innocence. The second prong is, is it a final termination such that it cannot be brought again? Now, at the moment of dismissal in this particular case — I'm not talking about this case. I'm talking about an abstract rule, dismissal without prejudice. No statute of limitations is run. Well, it's not statute of limitations. It's speedy trial time. Speedy trial time. Right. So I would say — I mean, it's not barred from — they're not barred from re-prosecuting. Correct. At the moment of dismissal, it's not barred from re-prosecution. However, once the speedy trial clock begins to turn or has run, as it did in this case, actually, at the time of dismissal, that is a bar. I think this Court has continuously held that where there's a non-final termination plus a statutory or constitutional bar to recommencement, that does ripen into the favorable — that does, I should say, that does ripen. What is your Second Circuit case for that proposition? Judge, I would look at — That holds that. I mean, you're saying we've held it. Judge, in Rogers, the Court held that prosecutorial inaction was effectively a favorable termination because any attempt to proceed with the case, even though it wasn't actually even dismissed. So in Rogers, the case was one step behind where Mr. Russell is, would be barred by the deadlines imposed by CPL-3030. Again, in Delcoe v. Rice — I'm sorry, that's not a Second Circuit case. In Stamf, this Court recognized, Stamf v. Long Island Railroad, the Court recognized that a termination can be considered favorable even if the prosecutor is theoretically capable of resurrecting the prosecution. And to adopt the bright-line rule would mean that the malicious prosecution claims often could not be brought in cases where the accusation — But a nulli of sequi, that is a favorable termination. I'm sorry, Judge, I just — A nulli, a nulli. Correct. The prosecutor nullies the indictment. That's a favorable termination. Well, I think with the court of appeal, we have to look to the court of appeal's decisions in both Smith, Hunter, and Cantelino. And at one point under the McFaughn decision, the dismissal in the interest of justice was not considered to be a favorable termination. However, following Smith-Hunter, the court of appeal said it was. And I think the rule for when a case is favorable shifted significantly from McFaughn to Smith-Hunter under the standard. So I think we have to really reevaluate the standard and ask, is a malicious — Why is this a favorable termination? Because it's — In other words, there wasn't really a decision on the merits because it was without prejudice. Because under Smith-Hunter, the court of appeals in New York, and again in Cantelino, specifically said that you do not need a determination on the merits. What you need is a determination that's not inconsistent with the innocence of the accused, thereby shifting the test from the McFaughn decision where they held that you had to have a determination on the merits to one that is not required but has to be just at least inconsistent with his accused. And as the court of appeals said in Cantelino, a favorable termination is any termination of a prosecution such that it can't be brought again. Sotomayor, they could not have been refiled in this case because of the statutory bar. Sotomayor, once the clock went at the time of the dismissal, the charges could have been refiled. In this case, they couldn't because the speedy trial time had already been elapsed. It had already elapsed? It had already elapsed. And two, at the point in time that this case was filed, it could not have been. Why was it done without prejudice, then, if the speedy trial time had already elapsed? I think the Court picked one basis to dismiss it and didn't address the other basis that were brought in the underlying motion. That, however, does not mean that Mr. Russell's termination was not favorable. It was not inconsistent with his innocence. And it was final. But you're saying a minute ago you just said that the speedy trial clock had run. Correct. At the time the judge entered the order. Is that correct? Correct. And so just to reiterate, then there was no possibility of bringing the suit again. That is correct. It could have been recommenced, but it would have been summarily dismissed based on operation of 3030, similar to what the Court found in Doe and similar to what some of the Eastern District cases, such as Morvey-Meehan and the Martinelli cases in our brief, had found. Now, actually, what we're doing is trying to predict what the New York Court of Appeals would decide. Yes, Your Honor. So would it make sense to certify this to the New York Court of Appeals? I don't think it would be a bad idea, Your Honor. What? I do not think it would be a bad idea. Not a bad idea. OK. If I may turn, then, to my few remaining minutes to why I believe the qualified immunity determination was wrong. Mr. I'm sorry, Your Honor. Just so we can get, so I don't hear an argument about how this guy was simply sitting on a park bench. I want to know what the officers knew when they made the arrest. The officers knew that this was a public campus, a public office park. It was open to the public. You're going to tell me everything that they knew. Also, they knew that there was a letter written. There was a letter written to Mr. I've been there a couple of days before and been told that he was not welcome there. But that doesn't get them over the threshold, Your Honor, because New York law is very specific. The New York legislator made a very specific choice to say that unless it's personally communicated to the plaintiff. Not, it doesn't establish a constructive notice standard. As this court held an argument- A letter to the lawyer is not sufficient to communicate to the plaintiff? A letter to a third party is not what the New York State Legislature envisioned. They- Not just any third party. This is a letter that, in good faith, they believed would go to him. Be that as it may, it was never communicated to Mr. Russell. Mr. Russell- Wouldn't it have been a violation in the first instance for a lawyer to have a direct communication with him? Well, it was never, he could have been copied on a letter, certainly, if his lawyer had communicated to him. Then potentially, but at the point in time, Mr. Russell told the officers, what are you talking about? I don't know anything about a letter. So they had no basis to believe. All right, now, but set that aside. I mean, he could have said, what are you talking about? I don't know anything about a letter. And he already had the letter right in his hand and had read it just before he took the first bite of his sandwich. So get off of that one. But that would have been speculation. And certainly what the New York State Legislature intended was communication to the person who is actually being told they can't be present. What's the burden on the officers? Impossible, is it not? It is not. There are cases where the officer observes a person being told they can't come back and then they come back. There are other cases where certainly, just last week this Court in Mitchell said that the officer didn't do enough of a diligent search to see who the actual owner was. In this particular case, the officers didn't know who the owner was. It was an area that's open to the public. He wasn't inside one Gannett Drive. He wasn't inside their offices. He was on a parking bench. The officers were operating in bad faith. I think the officers were plainly incompetent, which also deprives them of qualified immunity. And that- They had gotten information from the company, from the journal news, that this guy was not welcome there. They knew about a letter that had written. They'd explained it to him before. They called him up and said, come on over and get this guy. He's on our property again. And the letter had been written. Why isn't that arguable probable cause? Because the letter was not written to him. The New York legislature said what they meant and meant what they said. The police officers. The police officers. What this court said in Akerson is that even from a police officer's point of view, that where the actions being attributed to the plaintiff don't establish the elements of the crime, there's no qualified immunity. I think that's the case here. Because one, he knows it's an open office park. That the employee, my client had his employee ID showing he worked at Stone's Throw from where he was sitting, prominently displayed. And the officers, the information provided to the officers, the two arresting officers was that they had written a letter to his attorney. There was no evidence that he had been personally communicated to. And to the extent that the court applied the collective doctrine to find that, based on a statement from Rory Glazeman to the 911 operator, that information was never conveyed. The arresting officer simply didn't know that, that Mr. Glazeman had said he was told not to come back. So I don't think it's, because this particular officer wasn't cooperating in the investigation. He wasn't part of the investigation, and he didn't communicate that investigation to the other plaintiffs. Collective knowledge? Collective knowledge, yes. And I think under this court's recent decision in Brown, the court found that for the collective knowledge doctrine to apply, the officer doing the investigation has to have knowledge of it. Which Deloria and Duffelmayer in this case did not. And I would just simply say, your honor, I'm sorry. Did not, please continue. Did had to, you said had to have knowledge of it. What's the it? The information that was conveyed from Mr. Glazeman to Mr. Glazeman to the 911 operator, namely that Mr. Russell was, quote unquote, told not to come back. But really, the officers had more specific knowledge that what he meant by that was that a letter had been sent to his lawyer, but it hadn't been personally communicated to him. I just think the New York legislature said what it meant, meant what it said, and we can't find qualified immunity where the elements are lacking. Thank you, your honors. You've reserved two minutes for rebuttal. I did. Joseph, thank you. Had to move the mic down. Of course. I think the podium, there's a switch over on the podium that lowers that a little bit. That's a lot easier for us vertically challenged. May it please the court, my name is Steve Harpenis. I represent the municipal defendants in this case. Judge Seibel got both of these issues correct. I'll start with the qualified immunity analysis. Quite frankly, I think that there's actual probable cause to have arrested Mr. Russell, but there's certainly arguable probable cause. So what's the standard? We have to look at whether it was objectively reasonable for Officer Deloyer to arrest Mr. Russell for a trespass. Or would officers reasonably disagree as to whether or not there was probable cause? That's the standard, is to argue probable cause. So what do we have here? We have a individual, we can call it a place that's a private, the plaintiff and the appellant wants to call this a public place. It points in his brief, he calls it akin to a park or a national park. This is private property. It may be open to somebody, but it is private property. And under New York State law, you can be arrested for trespass to private property if you have essentially knowledge that you are not permitted on the property. That's the law. I mean, that's what the Court of Appeals has said. Did the Journal News have the authority to keep him off the bench? Well, the answer is yes. They're a tenant in possession of the property. Under New York law, tenants have the same possessory rights as a landlord, unless the landlord provides otherwise, there's no evidence to anything to the contrary. And the fact of the matter is, let's look at- And the officers could have reasonably believed that they had the right to- Absolutely, especially where the bench is located. I mean, let's take, we gotta keep this within context. The bench was up against the, virtually up against the door where employees of the Journal News come in and out. This isn't, Mr. Russell wasn't there just enjoying a beautiful day eating his lunch. He had just finished a very contentious piece of libel litigation against the Journal News. Was this a building where members of the public could just walk in? I'm sorry, Your Honor? Is this a building where members of the public- Not from where he was sitting, no. That was an employee, he was sitting at a bench- Employee entrance? An employee entrance. That in the record, that it's- That is in the record. And the bench was sort of blocked in by some HVAC equipment. You wouldn't, Judge, if you were going to look to sit outside and eat lunch, you wouldn't be sitting there. You're spending a lot of time talking about that side of it, but what about the absence of direct notice to him? Okay, so the question then becomes- I mean, the letter was to his lawyer. Apparently, there was a letter sent to his lawyer.  Well, it was emailed, and there's an email receipt that shows that his lawyer received it. Okay, okay. So the answer becomes- So then the question is, did the lawyer communicate, or is that just the letter to the lawyer? Correct. Now, is it reasonable for a police officer to believe that that satisfies the communication requirement for a trespass violation? Of course it is. People can- And I think- Did they show the letter to the police officer? Yeah, the officer was aware of the letter. They had talked about problems with Mr. Russell at the Journal News before. Was the letter shown to the officer that day, or was it the previous- He was already aware of it. It was the day before. It was marked in what's known as the red book, which is basically when the patrol supervisor's reading off potential issues. It's in the book, and I believe Detective Sergeant Detliff's indicated that he had read as his practice to read off what's contained in the red book at that point in time. It is completely reasonable. First of all, lawyers, we impute knowledge to clients for lawyers' actions all the time. And just as you said before, under the plaintiff's theory, the police officer's in a quagmire because he can't communicate directly with Mr. Russell. He has to go through his lawyer because he knows he's represented. So, in a sense that you could never have a trespass unless the police officer actually visually saw the person trespass if they're represented by counsel. I'm not sure that's the policy decision that we necessarily want to make and put police officers into that position. It doesn't make any sense, and it kind of guts the concept of qualified immunity. What we have to look at is, this wasn't a situation where Officer Deloria and Officer Duffelmeyer, who we don't even know necessarily did anything, there was no evidence that he actually did anything, he happened to be there at the time. Can you, before you run out of time- And I'm running out of time. Address the speedy trial. Okay. So let's look at the speedy- What was the status? All right, the plaintiff, I understand where the plaintiff's reading of Smith-Hunter's coming from. The Court of Appeals decision in Smith-Hunter is not necessarily the most artfully drafted opinion on this particular issue. But the fact of the matter is that what it does say is that a dismissal for a speedy trial may arise to a favorable termination. So the question that we're dealing with is, what happens when a 30-30 necessarily arises? What? A 30-30 violation, a speedy trial. It's Criminal Procedure Law Section 30-30. Right. Now, the cases do say a 30-30 determination may be a- First, what, is it correct that the speedy trial clock had already run? I do not believe that to be correct. I think it's a misunderstanding of the New York Criminal Procedure Law. But in any event, it ran afterwards. It ran after some time. So the question then becomes, when does that, for the purposes of a favorable termination, when does that trigger? When does that arise? In other words, even if a dismissal for facial insufficiency ultimately leads to a 30-30 bar, when did that favorable determination arise? Did it arise when the complaint was dismissed with leave to refile? That's when it arises. That's when the court has, that's what the court has to focus on. The action taken by the court at that particular time. We don't have a decision from the New York Court of Appeals on that, do we? I understand that. There is no question. What do you think about certifying the question? It's an open issue. I mean, I think all of this court's decisions would mandate affirming Judge Seibel. Breen, and recently in McGee. I mean, you know, a dismissal without prejudice is not a favorable termination. That's the point. That's pretty clear. But then the question is, what happens when you have a wrinkle, such as running of the speedy trial clock, or passing of the statute of limitations, or something of that sort? The problem with it, Judge Walker, is that you have not even a 30, not every 30-30 dismissal constitutes a favorable termination. The cases that have allowed for 30-30 cases to constitute a favorable termination were all after lengthy prosecutions. In other words, the plaintiff got arrested. He was charged, and 30-30, unlike the federal speedy trial clock, has very hard deadlines. And the people, the prosecution, didn't meet those deadlines. I can't find any cases, I haven't seen any case where a 30-30 has been deemed a dismissal has been deemed a favorable termination. I gather there was never a 30-30 order entered in this case. That's correct, Judge Schen. None. And that's the distinction here. At some point, the clock expired, and it couldn't have been brought, but, or are there exceptions? There are exceptions. And there is the plaintiff's statement that it's undisputed that 30-30 barred that case, I think, flies in the face of the statute itself. I don't, I think that there's more, the rule has more exceptions. Is there some sort of interest of justice, or some? There are a number of subsections of 30-30. My view, and my days as a prosecutor are long past me, but my view is that the exceptions to 30-30 swallow the rule. The time can be necessary- That's the way it is on the federal level. I'm sorry? That's the way it is on the federal level. The only difference is, for the most part, though, it's not, you're looking at, if you get a 30-30 dismissal with an order, it's with prejudice. They can't recommence the prosecution. There are exceptions on the federal level. So, if this had been a 30-30 dismissal, which would be with prejudice- If there had been an order. We would, right, from the court, then we would be having, we would not be having this discussion. We'd be having a different discussion as to whether or not the evidence or the basis for the 30-30 dismissal was consistent with innocence, as opposed to inconsistent with innocence. And in this particular case, we have a dismissal for facial insufficiency, and I'm not even sure if it was facially insufficient, to be quite honest with you, but that's another story. It doesn't lead to the same conclusions. It wasn't as if this prosecution had been going on for long periods of time, and then the people abandoned it because they couldn't prove their case. This was a local village justice dismissing the case because he believed that it hadn't been pled correctly, and then giving the prosecution leave to refile it. Thank you. Thanks. And Mr. Joseph, we'll give you plenty of time for rebuttals. We have a short calendar today, so we're not- We're never late. Yeah, well, we will. Good morning, Your Honors. Glenn Edwards for the Journal News Defendants. I want to go back just briefly and echo what Mr. Harfin has said, that the rule in New York continues to be, even after Smith-Hunter, as Judge Walker said, which is that a facial insufficiency termination by itself, if it's without prejudice and with leave to refile, which this clearly was, the criminal court said it two or three times. And in fact, the ADA made sure that the court said it. So there was no question that there was actually an abandonment here. Is there anything that gives us guidance on the situation that we are in? I know one side is saying, well, we look at it only at the moment that the dismissal occurs and see what the status was there. Was it refileable two minutes later or an hour later? Well, I think there's a couple of things. One is Smith-Hunter. I think Smith-Hunter can be fairly read because it refers to either that a favorable termination be one that is final without leave to rebring or a formal abandonment. And I think that if Smith-Hunter- But by formal abandonment, the people have to say, we're not going to prosecute. Right, right, and I don't think the court, that requirement seems to become, it seems to be severely undermined if, in fact, this sort of informal abandonment procedure gets adopted. That is, at some point, you can deem the court to, deem the prosecution to have been abandoned. And so I think the fair reading of Smith-Hunter would compel or at least support affirmance in this case, even though it didn't discuss the precise issue. I agree with that. It doesn't really compel it, that's the point. It's not binding in that sense that all we have to do is follow it. We have to, you know- No, I understand that. But I think the other source of guidance for this court is the fact that the New York Court of Appeals has repeatedly said that the public policy of New York disfavors malicious prosecution claims. They called it a heavy, quote unquote, heavy burden for plaintiffs. And I think that for, certainly, this would be an area because of that public policy where the courts, where the federal courts should be extremely cautious about expanding the liability and the litigation for malicious prosecution. What do you think about the possibility of certifying this to the New York Court of Appeals? In that way, they know their policy, and they know what New York law would compel, and then they could decide this. Well, again, I don't think it's necessary. We do that. I mean, we have a practice of doing that. And our relationship with the New York Court of Appeals is such that it's not a black hole. They get back to- No, I understand that. I understand that. Do you prefer us to rule in your favor now and not- Unsurprisingly, that is a very astute observation. But I certainly, I can't argue with getting guidance on this question. But I think the court, frankly, I think the court has sufficient guidance from the tenor of the opinions to- You don't think that six months later, the New York Court of Appeals is going to come down and say we were wrong? No, I don't. And you're pretty confident in your outcome in the New York Court of Appeals? Yes, yes I am. Okay. And I think other than to simply note the court that for my clients, the only issue is the malicious prosecution claim. But I think- Isn't that the key issue for you, for your side? It's the only issue for my, it's the only, we weren't involved in the other issues. What does the record tell us about Speedy Trial? Well, what it tells us is that I understand that the plaintiff's position is that the time had, in fact, expired. In fact, there was a motion to the criminal court to dismiss on those grounds in addition to facial insufficiency. But the court- Well, that would suggest- But the court did not do so. And in fact, when the court dismissed, it wasn't Mr. Joseph representing Mr. Russell at the time, but he did not step up and say, but I have the right to a Speedy Trial dismissal. And I think as Mr. Hartford- The motion, just so I'm clear, that there was a two-pronged motion to dismiss, one was for insufficiency, one was for Speedy Trial? At least two, there may have been more. There may have been more. And so the court ruled based on sufficiency and didn't address the Speedy Trial. That's correct. That would suggest that it was the plaintiff's position as the defendant, in that case, that the time had run. That was his position. That it was his position, but it would also suggest that if he had really been behind that position, he should have insisted on it. Did the people oppose? I assume the people opposed the motion. That, I don't know if that's in the record, I'm sorry. Okay. But you're saying that if he'd anticipated bringing this lawsuit, he should have perfected his record by getting an order of dismissal? Well, that's part of it. That's part of it, and it's also that, as Mr. Harfin has said, I think, and I certainly have never practiced in New York criminal court, but my own read of the CPL 3030 is that it's quite a complex statute. So I think to have any assurance that it was really time barred at that point, or Speedy Trial Clock barred at that point, is difficult. And that's going to be a difficult question on remand for Judge Seibel to determine if the court decides that she has to do that. And I think, just to finish up, that sort of collateral litigation of the criminal suit is one of the things that New York typically has tried to avoid in crafting its malicious prosecution law. And with that, I will thank the court. Mr. Joseph. Your Honor, it's what the court said in Cantilano was that we're going to look at malicious prosecution cases on a case-by-case basis, specifically. And I think when you look at the tests which were enunciated, and both Smith-Hunter- Is there anything in the record that tells us that indeed, this case was barred on speedy trial grounds? Yes, the underlying motion, counsel's correct, there was a three-pronged motion made. Essentially, one was facial sufficiency, one was that the charges, this is not a trespass charge at all, based on their open nature. And third, there was also a speedy trial. The judge essentially took- People oppose- Well, they made a somewhat of a scant opposition, even though they admitted they had requested several adjournments. Then approached and did a sidebar and advised the court they were not going to appeal a facial insufficiency determination. Essentially- Is that in the record anyway? That is. That's in the record. That's in the decision because the court reiterated it on the record in the decision which dismissed the thing. Then the court dismissed the case based on facial insufficiency. And then Mr. Russell's criminal defense attorney still continued to argue the merits. The judge essentially said, I'm not getting into the merits. So- I saw all that, but on this record, is there a favorable termination in the sense that there is a termination for speedy trial purposes? There is a there's not a court order saying it was terminated for a speedy trial. However, by looking at the date of dismissal- It's a complicated statute. There are exceptions. I mean, how do we know that, in fact, the action was barred under 3030? At what point was it barred? How much time went by? Did any of the exceptions apply? Wouldn't it be your burden to show that, indeed, there was a favorable termination on this basis? This was also a Rule 12 motion, so it's clear on that. But the under Sibley's, the court of appeals decision- The complaint does allege favorable termination. And when the complaint was filed, more than- Anything about the 3030? It does not specifically state that, but I think that would put a burden on plaintiffs. That would require a heightened pleading requirement on Rule 12, to survive Rule 12, which I don't think is really required, particularly since this wasn't raised really even in a defendant's motion in this case. Didn't even, initial motion didn't even raise the facial sufficiency. It was then done in reply. So I think that when you look at the, any court is just as capable as the New York courts of applying a mechanical 3030 analysis, which under the court of appeals decision in Sibley's a couple years ago. The exceptions have been largely eliminated, or are severely tightened. And the date of the complaint, if you calculate 30 days past the dismissal, the date of the complaint, the decision is barred by the trial. Right, but so let me ask you this. It seems to me that the court, if I am understanding the record correctly, that the trial court in the state proceeding, at least as represented by counsel and the DA, the deputy DA, made sure that it was without prejudice. Isn't that inconsistent with a speedy trial dismissal? It's not, because I think the court essentially took the easy way out, said I'm granting branch one, branch two and three, or denied his moot. Well, it clearly wasn't a speedy trial dismissal, because a speedy trial dismissal could not have been without prejudice, right? Correct, correct. It was- We know that he didn't get to that issue and didn't deal with it one way or the other. I think, even given the defense the most favorable viewpoint in this time, the speedy trial time is 30 days. Once 30 days elapses from the date of a non-final dismissal, it becomes final by operation of New York's speedy trial law, because any, as the court said, I think, in Doe, any attempt to rebring it at this point would necessarily be futile because it would be automatically dismissed. And there's no exception- Under 30-30. Under 30-30. And I think when you have a non-final determination plus a statutory or final determination into a final determination under the clear language of the Cantolino and Smith-Hunter decisions, which said that it doesn't matter how a case is determined so long that it ends in failure and is over and cannot be rebrought. Under that definition, a facial insufficiency determination ripens by virtue of law. Now, when we talk about facial insufficiency, the other thing to keep in mind is it truly is not inconsistent with innocence, because what is a facial inconsistency determination? It's a determination that the acts as alleged do not support the crime. So it's not inconsistent with innocence, which I think is an important point to remember. Now, turning back to the plaintiff's right to be there, I think the record supports that this was not an isolated or hidden section. This is a park. This is a park bench right next to a roadway where the public can just drive in. In fact, Officer Deloria drove in, I think testified that the bench was 10 to 15 feet from the roadway. There's exercise stations right there. There's pictures of the exercise stations in the record. And there are hotels on Gannett Drive. And the officers, one of the most important things the officers knew is that the journal news did not have exclusive use of Gannett Drive. There were a corporate park and Gannett were essentially one office park. There's hotels there, there's banks, there's gyms, there's physical therapy offices. And I really think this is analogous to the circumstance I state in my brief where I say, when the court says, what would an objectively reasonable officer think, we have to impute some common sense. And I think the vendor in Times Square or in Grand Central, which is privately owned, could not say to the officers, arrest that man. I told him to don't come back to my store and he's waiting outside track 108. There has to be some common sense. And I think in this case, that at a minimum, a jury could find that these officers weren't reasonable given the open nature. Thank you, Your Honors. Thank you, Mr. Joseph. Thank you, Mr. Edwards and Harfinis. We'll reserve decision on this case.